## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KIA MOTORS AMERICA, INC. | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| AUTOLAND HOLDINGS, LLC d/b/a | ) | |
| OLATHE KIA, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff KIA MOTORS AMERICA INC., by and through undersigned counsel, and for its Complaint against Defendant AutoLand Holdings, LLC d/b/a Olathe Kia, states and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for trademark infringement under the Lanham Act of 1946, as amended, 15 U.S.C. § 1114, federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), trademark dilution under the Lanham Act, 15 U.S.C. §1125(c), common law trademark infringement and unfair competition under Kansas law, breach of contract under Kansas law, and statutory trademark dilution under K.S.A. § 81-214.

### PARTIES

2.      Plaintiff Kia Motors America, Inc. ("KMA") is a corporation organized and existing under the laws of the State of California, with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606-1790.

3.      On information and belief, Defendant AutoLand Holdings, LLC d/b/a Olathe Kia ("Olathe Kia") is a limited liability company organized and existing under the laws of the State

of Kansas.  Its members are Olathe Real Estate Holdings, LLC, which owns 98% of Olathe Kia, and Geo Investments, LLC, which owns 2%.  William J. George and Joseph J. Merlo, Jr. are the members of Olathe Real Estate Holdings, LLC and Geo, LLC. William J. George is the managing member and operator of Olathe Kia.

4.      Olathe Kia has its principal place of business located at 130 North Fir Street in Olathe, Kansas.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over the first, second, third, and fourth Counts of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (original jurisdiction over trademark actions), and 15 U.S.C. § 1051 *et seq.* (the federal Trademark Act).  This Court has jurisdiction over these Claims for Relief under 15 U.S.C. §§ 1116-1118.

6.      The fifth through seventh Counts arise under Kansas statutory and common law. This Court has jurisdiction over the fifth Count under 28 U.S.C. § 1338(b) in that this claim is joined with substantial and related claims brought under the laws of the United States. This Court also has jurisdiction over the sixth and seventh Counts under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdictions over the state law claims.

7.      This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8.      This Court has personal jurisdiction over Defendant because it is organized and exists under the laws of the State of Kansas, has its principal place of business in Kansas, and has engaged in the conduct alleged in this complaint in Kansas.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

## ALLEGATIONS OF FACT

### KMA and the Kia Marks

10.     Kia Motors Corporation ("KMC") is the manufacturer of Kia-branded motor vehicles, parts, and accessories (the "Kia Products") sold and distributed throughout the world.

11.     Since 1994, when KMC first began importing Kia Products into the United States, KMA has served as the exclusive U.S. distributor of Kia Products and provides KMC's sales, marketing, distribution, dealer, repair, and maintenance services (the "Kia Services") in the United States.

12.     KMA owns, *inter alia*, the following registrations (the "Kia Registrations") for trademarks incorporating the KIA name, whether in standard character or design form (the "Kia Marks") in connection with goods and services related to the Kia Products and the Kia Services. Copies of the Certificates of Registration issued by the United States Patent and Trademark Office ("USPTO") for the Kia Marks are attached hereto as Exhibit A.

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| 3,101,388 |  | Retail financing services, namely installment sale and lease contracts in connection with the sale and lease of motor vehicles to consumers; wholesale financing services; |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | and commercial lending to motor vehicle dealers. |
| 4,837,002 |  | Providing extended warranty programs for pre-owned motor vehicles.<br><br>Emergency roadside assistance services, namely, responding to calls for roadside assistance, flat tire changing, emergency fuel supplying, and battery jump starting.<br><br>Vehicle inspection services. |
| 4,837,000 |  | Providing extended warranty programs for pre-owned motor vehicles.<br><br>Emergency roadside assistance services, namely, responding to calls for roadside assistance, flat tire changing, emergency fuel supplying, and battery jump starting.<br><br>Vehicle inspection services. |
| 5,030,207 |  | Financing services, namely financing services for consumers engaging in installment sale and lease contracts for the purchase or lease of motor vehicles; wholesale financing services; and commercial lending to motor vehicle dealers. |
| 4,713,720 |  | Installation, maintenance and repair of automobiles. |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| 4,313,344 | KIA UVO | Apparatus in automobile for video monitoring and display of the rear of automobiles, namely, an on-board automobile surveillance system comprised of cameras and monitors; electronic control unit in automobile for tracking and displaying wear information for automobile parts; electronic control unit in automobile for tracking and displaying remote door unlock, theft detection and notification status, stolen vehicle tracking, automatic notification of air bag deployment, and interacting with a customer service center; electronic control unit in automobile for interacting with an automobile customer service center and displaying information; diagnostic units in automobiles, namely, sensors and detectors for use in tracking, displaying and controlling the actuation and operation of safety apparatus and equipment; electronic control unit in automobile for navigation; electronic control unit in automobile for receiving, transmitting, storing, and displaying sound, data, music, video and text; electronic control unit in automobiles for use with radio and electronic media players; electronic control unit in automobiles for transmitting vehicle diagnostic |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | information, for transmitting vehicle status information to emergency and service personnel, for receiving and displaying traffic status information, and for providing and displaying directional guidance information. |
| 4,154,511 | KIA UVO | Apparatus in automobile for video monitoring and display of the rear of automobiles, namely, an on-board automobile surveillance system comprised of cameras and monitors; electronic control unit in automobile for tracking and displaying wear information for automobile parts; electronic control unit in automobile for tracking and displaying remote door unlock, theft detection and notification status, stolen vehicle tracking, automatic notification of air bag deployment, and interacting with a customer service center; electronic control unit in automobile for interacting with an automobile customer service center and displaying information; diagnostic units in automobiles, namely, sensors and detectors for use in tracking, displaying and controlling the actuation and operation of safety apparatus and equipment; electronic control unit in automobile for navigation; electronic control unit in automobile for receiving, |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | transmitting, storing, and displaying sound, data, music, video and text; electronic control unit in automobiles for use with radio and electronic media players; electronic control unit in automobiles for transmitting vehicle diagnostic information, for transmitting vehicle status information to emergency and service personnel, for receiving and displaying traffic status information, and for providing and displaying directional guidance information. |
| 5,030,205 | KIA FINANCE THE SMARTEST WAY TO FINANCE | Financing services, namely financing services for consumers engaging in installment sale and lease contracts for the purchase or lease of motor vehicles; wholesale financing services; and commercial lending to motor vehicle dealers. |
| 3,957,815 | KIA MOTORS FINANCE | Retail financing services, namely financing services for consumers engaging in installment sale and lease contracts for the purchase or lease of motor vehicles; wholesale financing services; and commercial lending to motor vehicle dealers. |
| 3,929,200 |  | Printed materials, namely, training guides for automobile dealership personnel in the area of sales, service, and management; decals.<br><br>Promoting the servicing of automobiles by others through the dissemination of promotional |

| REGISTRATION NUMBER | MARKS | GOODS AND SERVICES |
|---|---|---|
| | | material through the distribution of printed material.<br><br>Training courses in the field of operation, sales, service, and management of automobile dealerships. |
| 3,929,199 | KIA CUSTOMER 360° SERVICE EXPERIENCE | Printed materials, namely, training guides for automobile dealership personnel in the area of sales, service, and management; decals.<br><br>Promoting the servicing of automobiles by others through the dissemination of promotional material through the distribution of printed material.<br><br>Training courses in the field of operation, sales, service, and management of automobile dealerships. |

13.     KMA has extensively used the Kia Marks in connection with the Kia Products and Kia Services in the United States.  Through its dealers, as discussed below, KMA has sold over seven million vehicles in the United States featuring the Kia Marks since 1994 and for many years has used the Kia Marks with the Kia Services offered in connection with these vehicles.

14.     Indeed, KMA widely promotes, advertises and markets the Kia Products and Kia Services under the Kia Marks.  In doing so, KMA has spent millions of dollars on countless television, radio, online and print advertisements and the operation of a U.S. website located at www.kia.com.

15.     In addition, KMA is the Official Automotive Partner of the National Basketball Association ("NBA") and a sponsor for NBA events and activities such as Tip-Off Week, the Performance Awards, the Race to the MVP Ladder, The Rookie Ladder, Top Plays, and éne•bé•a.  KMA also acts as a partner with the following NBA teams:  the Atlanta Hawks, the Charlotte Hornets, the Chicago Bulls, the Golden State Warriors, the Los Angeles Clippers, the Miami Heat, the New York Knicks, the Orlando Magic, the Philadelphia 76ers, the Phoenix Suns, the Cleveland Cavaliers, and the San Antonio Spurs.

16.     Further, KMA has collaborated with LeBron James to create a customized, one of a kind, "King James Edition" Kia K900 vehicle, which was auctioned off to charity with the proceeds benefiting The LeBron James Family Foundation.

17.     KMA is also the Official Automotive Partner of the Ladies Professional Golf Association ("LPGA") and Kia serves as the Official Vehicle for eight domestic LPGA tournaments, including two major championships, the ANA Inspiration and KPMG Women's PGA Championship. This past March also marked the eighth year of Kia's entitled LPGA tournament, the Kia Classic.

18.     In addition, KMA is a Founding Partner of the College Football Hall of Fame and the Kia Sorrento serves as the Official Vehicle of the College Football Hall of Fame.

19.     Kia also engages with communities throughout the United States through its partnerships with various charities, awareness groups, and environmental organizations, such as DonorsChoose.org, B.R.A.K.E.S. (Be Responsive And Keep Everyone Safe), The Ecology Center in Orange County, California, and The Pacific Marine Mammal Center in Laguna Beach, California.

20.    These numerous sponsorships and partnerships have raised public awareness and recognition in the United States of the Kia brand and the Kia Marks in connection with the Kia Products and the Kia Services offered in connection therewith.

21.    Furthermore, in 2016 and 2017, Kia Products received numerous awards for safety, value, and quality, including the IIHS Top Safety Pick,  the IIHS Top Safety Pick+, the NHTSA Overall 5-Star Crash Safety Rating, Best Family Car by Kelley Blue Book's KBB.com, one of the 10 Coolest Cars Under $18,000 by Kelley Blue Book's KBB.com., one of Edmund.com's 10 Best Cars for Teen Drivers, Best Buy Award from Kelley Blue Book's KBB.com, Kelley Blue Book's KBB.com's one of 5 Best Electric Cars Under $40,000, of Kelley Blue Book's KBB.com's one of 10 Best Hybrid Cars Under $40,000, Kelley Blue Book's KBB.com's one of 5 Best Plug-In Hybrid Cars Under $40,000, one of Autotrader's Must Test Drive Vehicles, Best 3-Row SUV for the Money by U.S. News & World Report, and Best Large Car for Families by U.S. News & World Report. *See* Exhibit B for details.

22.    In addition, according to J.D. Power, KIA has been the #1 Brand in Initial Quality for the past two years.  Specifically, the Kia Soul, Sorento, Forte, Cadenza, and Niro have been named the Highest Ranked Large Car, Compact Car, Small SUV, Midsize SUV and Compact Multi-Purpose Vehicle in Initial Quality.  Moreover, the April 2017 Annual Auto Issue of Consumer Reports also ranked Kia as the number six (6) brand overall, with categories encompassing road-test scores, predicted reliability, and owner satisfaction.  These awards and achievements underscore the fame and recognition of the Kia Marks in connection with the Kia Products, as well as the Kia Services, which augment the sales, value and safety of the Kia Products.

23.     Indeed, according to a 2016 study by Interbrand, the Kia brand is estimated at a value of $6.3 billion, having grown over 50% since 2012, and having increased its worth by 6.5x since 2007. *See* Exhibit C.

24.     As a result of KMA's extensive sales, advertising, marketing, promotional efforts, and varied awards and achievements, the distinctive Kia Marks have become well-known and recognized by the public, and serve to identify the source of the Kia Products and Kia Services. Indeed, the Kia Marks are renowned throughout the United States and famous, including in the State of Kansas, and are associated with the qualities of safety, trust, customer service, innovation, durability, technology, performance and confidence by consumers.

## The Olathe Kia Dealer Agreement

25.     KMA offers the Kia Products and the Kia Services through authorized dealers within the United States.   The relationships between KMA and these dealers are governed by certain written dealer agreements ("Kia Dealer Sales and Service Agreements"), which set forth rigorous requirements and standards to ensure that customers of Kia Products receive the same consistently high-quality service and assistance throughout the United States.

26.     Only persons and entities appointed by KMA who agree to be bound by the terms of these Kia Dealer Sales and Service Agreements are authorized to use the Kia Marks as specified in the Kia Dealer Sales and Service Agreements in connection with the Kia Products and Kia Services.

27.     KMA and Olathe Kia are parties to such a Kia Dealer Sales and Service Agreement, fully executed as of July 2, 1999 (the "Olathe Kia Dealer Agreement").   A copy of this agreement is attached hereto as Exhibit D.

28.     The Olathe Kia Dealer Agreement refers to Olathe Kia as "DEALER" and to KMA as "COMPANY."    It consists of two different parts: Part 1 contains "Specific Terms"

applicable to Olathe Kia, and Part 2 contains "Standard Provisions" applicable to all other authorized Kia dealers, including Olathe Kia.

29.     Part 1 of the Olathe Kia Dealer Agreement expressly provides that Olathe Kia "is authorized to conduct its Kia dealership operations at the following locations ***and no others***. . . ." (emphasis added).  The agreement then identifies 130 N. Fir, Olathe Kansas, 66061, as the sole authorized location for all of Olathe Kia's dealership operations, including specifically "Used Vehicle Display and Sales" (the "Authorized Location").

30.     Article IX.A.3.b of Part 2 of the Olathe Kia Dealer Agreement contains, among other things, provisions governing Olathe Kia's permissible use of the Kia Marks. In that provision, KMA grants to Olathe Kia the "non-exclusive privilege of displaying or otherwise using" the Kia Marks "in connection with the selling and servicing of Kia Products."    Article IX.A.3.b further provides that "DEALER may use the Kia Marks only at the locations identified in Part 1 [of the Olathe Kia Dealer Agreement] and for the purposes stated in this Agreement." In addition, this section states that "DEALER agrees that it will promptly discontinue the display and use of any and all Kia Marks . . . when and for any reason COMPANY requests that it do so."

31.     The Olathe Kia Dealer Agreement also prohibits Olathe Kia from changing the location of any of its dealership operations, or establishing any additional locations at which dealership operations are conducted, without the prior written consent of KMA.   Article VI of Part 2 of the agreement specifies that, "DEALER agrees that it shall conduct its Kia dealership operations only in the facilities and at the locations identified in Part 1 and approved by COMPANY for the conduct of DEALER'S Kia dealership operations and display of the Kia Marks."   Article VI further provides that "DEALER may not, either directly or indirectly,

establish or conduct any Kia dealership operations of the type contemplated in this Agreement, including without limitation the display, sale or servicing of Kia Products, or display the Kia Marks at any facility or location other than those identified in Part 1."

32.     The foregoing standard contractual provisions requiring its dealers to conduct their Kia dealership operations, and to display the Kia Marks, only at the locations authorized and identified in Part 1, are of critical importance to KMA. With the assistance of outside expert consultants, KMA attempts to place Kia dealerships in optimal locations and to provide sufficient separation between dealership locations such that each authorized dealer has an opportunity to make sufficient sales of Kia Products and Kia Services so as to be successful. Indeed, KMA monitors markets nationwide on an ongoing basis to study the efficiency of its dealer network and to determine, among other things, if and when it is necessary or appropriate to relocate a Kia dealership, to establish a new Kia dealership in an unserved market, or to appoint an additional Kia dealer in an underserved market.  KMA has spent and continues to spend millions of dollars annually on these market studies and actions.

33.     Further, KMA's ability to relocate or add Kia dealers is restricted by the laws of most states.  For example, Kansas law prohibits a motor vehicle manufacturer or distributor, such as KMA, from establishing or relocating a dealer within the "relevant market area" (or "RMA") of an existing dealer of the same vehicle brand without providing the existing dealer with notice and an opportunity to file a protest with the Director of Vehicles.  If a protest is filed, the manufacturer or distributor must then prove good cause for the establishment or relocation.  The Kansas statute defines the RMA as the greater of (i) the area of responsibility defined in the existing dealer's franchise agreement or (ii) a 10-mile or 15-mile radius "around [the] existing"

dealer, depending on the population of the county in which the existing dealer is located. Kan. Stat. Ann. § 8-2430(e)(2).

34.     In light of these restrictions in the Kansas statute, and similar restrictions in other state statutes, approving "split facilities" for a Kia dealership – e.g., where the dealer's sales showroom is in one location while its service facility or used car operations are at another – creates the risk that the radius around the "existing dealer" will be measured from each of the various locations rather than from one central location, thereby enlarging the existing dealer's RMA and restricting the ability of KMA to add or relocate other Kia dealers.

35.     For this reason, as well as for reasons of customer convenience, KMA will approve "split facilities" only when they are in close proximity to one another.

### Olathe Kia's Unlawful Actions

36.     On May 22, 2017, KMA received an undated letter from Olathe Kia stating that it had "acquired a supplemental location a few miles south of [its] current location" and requesting KMA's approval of the location, which was identified as 905 E. Santa Fe in Gardner, Kansas (the "E. Santa Fe Site"). The May 22, 2017 letter did not specify the nature of the operations that Olathe Kia proposed to conduct at the E. Santa Fe Site.  A copy of this letter is attached here to as Exhibit E.

37.     However, rather than "a few miles south," the E. Santa Fe Site is approximately eight (8) miles from Olathe Kia's authorized location.

38.     On the same day that KMA received Olathe Kia's letter, a KMA representative visited the E. Santa Fe Site and found signs on the facility displaying the Kia Marks with the words "BILL GEORGE KIA NEW USED OUTLET COMING SOON." These signs and displays of the Kia Marks were installed without notice to KMA and without KMA's approval.

39.     By letter dated May 31, 2017, KMA notified Olathe Kia that KMA would not approve Olathe Kia's establishment of Kia operations at the E. Santa Fe Site. The letter reminded Olathe Kia that its "sole approved location under its Kia Dealer Sales and Service Agreement is 130 N. Fir Street in Olathe," and that KMA had not approved the establishment of Kia operations at the E. Santa Fe Site.

40.     In its May 31, 2017 letter, KMA also "demand[ed] that the Dealership immediately remove all Kia signs from the E. Santa Fe Site and otherwise cease and desist from any actions or statements that hold itself as authorized to conduct Kia operations at the E. Santa Fe Site." The letter asked Olathe Kia to "provide a written response to this letter that confirms the Dealership has complied with the foregoing demand" by no later than June 7, 2017.  A copy of KMA's May 31, 2017 letter is attached hereto as Exhibit F.

41.     Olathe Kia's response to KMA's May 31, 2017 letter came in the form of correspondence from Olathe Kia's counsel dated June 5, 2017 (the "June 5 Letter"). The June 5 Letter did not dispute that KMA had not approved the establishment of Kia operations at the E. Santa Fe Site or that Olathe Kia's sole Authorized Location was 130 N. Fir Street.

42.     However, the June 5 Letter did not confirm that Olathe Kia would remove all Kia signs from the E. Santa Fe Site, but instead advised KMA that Olathe Kia would be putting up new signage displaying the Kia Marks at the E. Santa Fe Site.

43.     The June 5 Letter acknowledged that the signs that had been in place at the E. Santa Fe Site did "indicate the location will be opening soon to include new car sales" but stated that Olathe Kia would actually "not advertise nor engage in new car sales" at the E. Santa Fe Site and had removed the banners indicating that new car sales would be conducted there.  The June 5 Letter also stated, however, that Olathe Kia intended to set up new signs that would display the

Kia Marks in connection with the sale of "certified used" Kia vehicles.  A copy of Olathe Kia's June 5 Letter is attached hereto as Exhibit G.

44.    Notwithstanding KMA's prior cease-and-desist demand, at some time on or before June 12, 2017, Olathe Kia proceeded to put up the new signage referred to in the June 5 Letter, displaying the Kia Marks in connection with the sale of certified-used Kia vehicles.  The new signage states that the business operating at the E. Santa Fe Site is "BILL GEORGE OUTLET KIA USED CERTIFIED" and "OLATHE KIA USED CARS."  Photographs of this signage, taken on July 19, 2017, are attached hereto as Exhibit H.

45.    By letter dated June 14, 2017 (the "June 14 Letter"), KMA reiterated its demand that Olathe Kia immediately remove these new signs "and any other Kia signs from the E. Santa Fe Site and otherwise cease and desist from any actions or statements that hold itself out as authorized to conduct Kia operations at the E. Santa Fe Site." A copy of the June 14 Letter is attached hereto as Exhibit I.

46.    Notwithstanding KMA's second cease-and-desist demand in the June 14 Letter, Olathe Kia failed and refused to remove the signage displaying the Kia Marks from the E. Santa Fe Site and continues to hold itself out as a dealer authorized to conduct Kia used car operations at that site.

47.    Neither KMA nor KMC has authorized Olathe Kia's use of the Kia Marks at the E. Santa Fe Site.

48.    In an attempt to amicably resolve this dispute and avoid litigation, representatives of KMA met with representatives of Olathe Kia at Olathe Kia's Authorized Location on July 13, 2017. At that meeting, however, Olathe Kia continued to take the position that it would not

remove the signage displaying the Kia Marks from the E. Santa Fe Site and would not cease holding itself out as authorized by KMA to conduct Kia used car operations at that site.

49.     Indeed, Olathe Kia has continued its unauthorized use of the Kia Marks at the E. Santa Fe Site.  Photographs of the signage at Olathe Kia's E. Santa Fe Site, taken on August 25, 2017, are attached hereto as Exhibit J.

## FIRST CAUSE OF ACTION
### (Federal Trademark Infringement -15 U.S.C. § 1114(1))

50.     KMA incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51.     KMA, as the owner of all right, title, and interest in and to the Kia Marks (as set forth above) has standing to maintain an action for trademark infringement under the Federal Trademark Statute, Lanham Act § 32(1) (15 U.S.C. § 1114(1)).

52.     The Kia Marks are inherently distinctive and naturally serve to identify KMA as the source of the Kia Products and Kia Services, including sales of certified used Kia vehicles, to consumers.

53.     Through its extensive promotional, advertising, marketing, sales, partnerships, accolades, and exclusive use of the Kia Marks, the Kia Marks have also acquired distinctiveness in the market.

54.     Olathe Kia, without approval from KMA and in violation of its Kia Dealer Sales and Service Agreement, has used in commerce reproductions, counterfeits, copies, and/or colorable imitations of the Kia Marks in connection with the sale, offering for sale, advertising, or promotion of its certified used car operations at an unauthorized dealer location, namely the E. Santa Fe Site, which is likely to cause confusion, or to cause mistake or to deceive consumers as

to KMA's affiliation, connection, association, sponsorship, or approval of Olathe Kia's E. Santa Fe Site, in violation of the Lanham Act, 15 U.S.C § 1114(1)(a).

55.     KMA is informed and believes, and on that basis alleges, that Olathe Kia's acts have been committed deliberately and willfully, with knowledge of KMA's exclusive rights and goodwill in the Kia Marks, and of the infringing nature of the marks when used in connection with the certified used car services at the E. Santa Fe Site, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

56.     Olathe Kia's unauthorized use of the Kia Marks allows it to impermissibly benefit from KMA's goodwill, reputation, and success.

57.     As a result of Olathe Kia's unauthorized use of the Kia Marks, consumers have been and, unless Olathe Kia is restrained, will continue to be confused as to KMA's affiliation, connection, sponsorship, or approval of Olathe Kia's sales of certified used cars at the E. Santa Fe Site and Olathe Kia will have unfairly derived, and will continue to unfairly derive, income, profits, and business opportunities as a result of its acts of infringement.

58.     KMA has been, and will continue to be, damaged by Olathe Kia's acts of infringement in an amount to be determined at trial.

59.     Upon information and belief, Olathe Kia's conduct is willful, deliberate, intentional, and in bad faith.

60.     As a result of Olathe Kia's acts, Olathe Kia has caused, and will continue to cause, irreparable harm to KMA and to the goodwill associated with the Kia Marks, for which KMA has no adequate remedy at law.

61.     As the acts alleged herein constitute infringement of the Kia Marks under 15 U.S.C. § 1114(1), and as KMA has no adequate remedy at law, KMA is entitled to injunctive

relief as well as to Olathe Kia's profits and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and to reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(b).

**SECOND CAUSE OF ACTION**
**(Federal Unfair Competition– 15 U.S.C. § 1125(a)(1)(A))**

62.     KMA incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63.     As discussed herein KMA is the registered owner of the Kia Marks, and as a result of its extensive use of the Kia Marks, also has common law rights to the Kia Marks, which are uniquely associated with KMA as the source of the Kia Products and Kia Services.

64.     The Kia Marks are inherently distinctive and/or have acquired distinctiveness.

65.     Olathe Kia has used in commerce, without the approval of KMA, reproductions, counterfeits, copies, and/or colorable imitations of the Kia Marks in connection with the sale, offering for sale, advertising, or promotion of its certified used car operations at an unauthorized dealer location, namely the E. Santa Fe Site, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KMA's affiliation, connection, association, sponsorship, or approval of Olathe Kia's E. Santa Fe Site, in violation of the Lanham Act, 15 U.S.C § 1125(a)(1)(A).

66.     KMA has been, and will continue to be, damaged by Olathe Kia's acts of unfair competition in an amount to be determined at trial.

67.     Upon information and belief, Olathe Kia's conduct is willful, deliberate, intentional and in bad faith, and if not restrained, Olathe Kia will have unfairly derived, and will continue to derive, income, profits, and business opportunities as a result of its wrongful acts.

68.     As a result of Olathe Kia's acts, Olathe Kia has caused, and will continue to cause, irreparable harm to KMA and the goodwill associated with the Kia Marks, for which KMA has no adequate remedy at law.

69.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as KMA has no adequate remedy at law, KMA is entitled to injunctive relief as well as to Olathe Kia's profits and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and to reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(a).

### THIRD CAUSE OF ACTION
### (Federal Trademark Dilution– 15 U.S.C. § 1125(c))

70.     KMA incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

71.     As discussed above, KMA is the owner of the Kia Marks, which are strong, well-known and distinctive marks that acquired fame prior to the commencement of Olathe Kia's wrongful actions.

72.     Olathe Kia's unauthorized commercial use of the Kia Marks have caused or are causing dilution by blurring and/or tarnishing the famous Kia Marks, and otherwise impairs the distinctiveness and/or harms the reputation of those trademarks. Olathe Kia's conduct blurs the public's exclusive identification of these marks with KMA and tarnishes and degrades the positive associations of the Kia Marks.

73.     KMA is informed and believes, and on that basis alleges, that Olathe Kia's acts are willful in that Olathe Kia willfully intends to, and in fact, does, trade on the reputation of the Kia Marks and/or to cause dilution of the Kia Marks.

74.     Olathe Kia's wrongful acts have caused and will continue to cause great and irreparable injury and damage to KMA and to the goodwill in the Kia Marks, which injury and

damage cannot be adequately quantified, and unless this Court restrains Olathe Kia from further commission of said acts, KMA will continue to suffer substantial irreparable injury, for which it has no adequate remedy at law.

75.     Due to the acts of Olathe Kia, KMA has suffered and will continue to suffer loss of income, profits, and valuable business opportunities, and, if not restrained, Olathe Kia will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its acts as described herein.

76.     As the acts alleged herein constitute willful violations of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and, as KMA has no adequate remedy at law, KMA is entitled to injunctive relief, as well as to Olathe Kia's profits and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorney's fees and prejudgment interest pursuant to 15 U.S.C. §1117(a).

### FOURTH CAUSE OF ACTION
**(Kansas Common Law Trademark Infringement)**

77.     KMA incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     As set forth above, KMA is the owner of the Kia Marks, which are famous and distinctive marks entitled to protection under Kansas law.

79.     Without KMA's consent, Olathe Kia has used reproductions, counterfeits, copies, and/or colorable imitations of the Kia Marks in commerce or in connection with the sale, offering for sale, advertising or promotion of its certified used car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KMA's affiliation, connection, association, sponsorship, or approval of Olathe Kia's E. Santa Fe Site, in violation of Kansas common law.

80.     KMA is informed and believes, and on that basis alleges, that Olathe Kia's acts have been committed deliberately and willfully, with knowledge of KMA's exclusive rights and goodwill in the Kia Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive consumers as to KMA's affiliation, connection, association, sponsorship, or approval of Olathe Kia's E. Santa Fe Site.

81.     As a result of Olathe Kia's trademark infringement, KMA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Kia Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

82.     If not restrained, Olathe Kia will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts of infringement.

83.     As the acts alleged herein constitute infringement of the Kia Marks, and as KMA has no adequate remedy at law, KMA is entitled to injunctive relief as well as to other common law remedies.

### FIFTH CAUSE OF ACTION
### (Kansas Common Law Unfair Competition)

84.     KMA incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85.     Without KMA's consent, Olathe Kia has used reproductions, counterfeits, copies, and/or colorable imitations of the Kia Marks in commerce on or in connection with the sale, offering for sale, advertising or promotion of its certified used car operations, which is likely to cause confusion, or to cause mistake or to deceive consumers as to KMA's affiliation, connection, association, sponsorship, or approval of Olathe Kia's E. Santa Fe Site, in violation of Kansas common law.

86.     KMA is informed and believes, and on that basis alleges, that Olathe Kia's acts have been committed deliberately and willfully, with knowledge of KMA's exclusive rights and goodwill in the Kia Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive consumers as to KMA's affiliation, connection, association, sponsorship, or approval of Olathe Kia's E. Santa Fe Site.

87.     As a result of Olathe Kia's unfair competition, KMA has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the Kia Marks, as well as the goodwill associated therewith, for which it has no adequate remedy at law.

88.     If not restrained, Olathe Kia will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of its acts of unfair competition.

89.     Accordingly, KMA is entitled to an injunction and other common law remedies against Olathe Kia.

**SIXTH CAUSE OF ACTION**
**(Breach of Contract)**

90.     KMA incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91.     As described above, KMA and Olathe Kia are parties to the fully executed Olathe Kia Dealer Agreement, whereby KMA allows Olathe Kia to use the Kia Marks in connection with its Kia dealership in accordance with certain restrictions and limitations.

92.     By establishing a secondary location at the E. Santa Fe Site and displaying the Kia Marks there without KMA's authorization or approval, Olathe Kia has breached the provisions of the Olathe Kia Dealer Agreement in which Olathe Kia agreed that it (a) would not

display the Kia Marks at any location other than at the Authorized Location; (b) would promptly discontinue the display and use of any and all Kia Marks when and for any reason requested by KMA; (c) would conduct its Kia dealership operations, including used car display and sales, only at the Authorized Location; and (d) would not establish Kia operations at any other location without the prior written consent of KMA.

93.     Olathe Kia's breaches of the Olathe Kia Dealer Agreement threaten KMA with irreparable harm in the form of, among other things, loss of control over the display and use of the Kia Marks, loss of control over the location of authorized Kia dealerships in its dealer network, and potential restrictions on KMA's ability to add or relocate a Kia dealer, if and when necessary or appropriate, within a 10-mile radius of the E. Santa Fe Site.

94.     By reason of the foregoing, KMA is entitled to preliminary and permanent injunctive relief preventing Olathe Kia from displaying the Kia Marks and conducting Kia dealership operations at the E. Santa Fe Site or at any location other than the Authorized Location, as well as damages in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### (State Trademark Dilution)

95.     KMA incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96.     The Kia Marks, owned by KMA, are distinctive, strong, well-known marks that have become famous in Kansas and elsewhere as a result of KMA's activities, as described in this Complaint.

97.     The Kia Marks became famous long before Olathe Kia's unauthorized use of the KMA Marks.

98.     Olathe Kia, without authorization or permission from KMA, is making commercial use of the Kia Marks, which have caused and are causing dilution of the distinctive quality of the Kia Marks. Olathe Kia's conduct blurs the public's exclusive identification of these marks with KMA and tarnishes and degrades the positive associations of the Kia Marks.

99.     Olathe Kia's acts constitute a violation of the Kansas Anti-Dilution Statute, K.S.A. § 81-214.

100.    Olathe Kia's dilution of the Kia Marks has been willful and has caused and will cause serious and irreparable injury to the reputation and goodwill of KMA for which KMA is without adequate remedy at law.  KMA is therefore entitled to injunctive and other relief.

## PRAYER FOR RELIEF

101.    WHEREFORE, KMA prays for judgment as follows:

102.    For an order finding that Olathe Kia violated: (1) 15 U.S.C. § 1114; (2) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) 15 U.S.C. § 1125(c); (4) Kansas common law with respect to trademark infringement; (5) Kansas common law with respect to unfair competition; (6) Kansas common law with respect to breach of contract; and (7) K.S.A. § 81-214;

103.    For an order preliminarily and permanently enjoining Olathe Kia from committing any other act calculated or likely to cause the public or trade to believe that Olathe Kia's E. Santa Fe location is in any way connected to, licensed by, sponsored by, affiliated with, or associated with KMA, KMC, the Kia Products or Kia Services or the Kia brand;

104.    For an order preliminarily and permanently enjoining and restraining Olathe Kia, its agents and employees, and all those acting in concert with Olathe Kia, from using the Kia Marks or any colorable imitation thereof in any way at the E. Santa Fe location;

105.    For an order preliminarily and permanently enjoining and restraining Olathe Kia from operating any Kia dealership operations at 905 E. Santa Fe in Gardner, Kansas or any other unauthorized location;

106.    For an order preliminarily and permanently enjoining Olathe Kia from committing any acts that will dilute, either by tarnishment or blurring, the quality of the Kia Marks;

107.    For an order pursuant to 15 U.S.C. § 1116(a) directing Olathe Kia to file with the Court and serve on KMA's counsel, within thirty days after service on Defendant of the injunctions requested herein, a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunctions;

108.    For an accounting of all revenues and profits obtained as a result of the violations alleged herein;

109.    For restitution and disgorgement of all revenues and profits obtained as a result of the violations alleged herein;

110.    For damages according to proof, including treble damages as may be allowed by law;

111.    For attorneys' fees as may be allowed by law;

112.    For costs of suit incurred herein; and

113.    For such other relief as the Court may deem just and proper.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Local Rule 40.2, KMA designates Kansas City, Kansas as the location for trial.

Respectfully submitted this 28th day of August, 2017.

*/s/ Brent N. Coverdale*
Brent N. Coverdale      KS # 18798
Brendan M. Quinn      KS # 27482
Scharnhorst Ast Kennard Griffin PC
1100 Walnut, Suite 1950
Kansas City, MO 64106
Tel: (816) 268-9419
Fax: (816) 268-9409
E-mail:          bcoverdale@sakg.com
                 bquinn@sakg.com

and

**HOGAN LOVELLS US, L.L.P.**

Anna Kurian Shaw (seeking admission *pro hac vice*)
Katherine Bastian (seeking admission *pro hac vice*)
Hogan Lovells US LLP
555 13th Street, NW
Washington, DC 20004
Tel.: (202) 637- 5600
Fax: (202) 637- 5910
E-mail: anna.shaw@hoganlovells.com
          katherine.bastian@hoganlovells.com


John Sullivan (seeking admission *pro hac vice*)
Hogan Lovells US LLP
875 3rd Ave
New York, NY 10022
Tel.: (212) 918-3635
Fax: (212) 918-3100
E-mail: john.sullivan@hoganlovells.com

*Attorneys for Plaintiff Kia Motors America, Inc.*